IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAMON CHARLES SANFORD                                                    PLAINTIFF

v.                                    Civil No. 5:24-cv-05057

OFFICER BRAD ROBINSON                                                    DEFENDANT

## MEMORANDUM OPINION

This is a civil rights action filed by Plaintiff, Damon Charles Sanford, under 42 U.S.C. §
1983, alleging violations of the Fourth Amendment and the Fourteenth Amendment.  Sanford
proceeds in this matter *pro se*.  Before the Court is Defendant's Motion for Summary Judgment.
(ECF No. 80).  Sanford responded (ECF No. 121),[1] and Defendant replied. (ECF No. 133).

## I. BACKGROUND

Sanford filed his initial complaint on March 8, 2024, naming defendants Officer Eli Hobbs,
Officer Brad Robinson, and the Washington County Sheriff's Department. (ECF No. 1).  In a pre-
service screening of the initial complaint, Sanford's claims against the Washington County
Sheriff's Department were dismissed without prejudice for failure to state a cognizable claim.
(ECF Nos. 9, 13). Sanford's claim against Officer Robinson for malicious prosecution and false
imprisonment/arrest in his individual capacity as well as Sanford's claim against Officer Hobbs
for malicious prosecution in his individual capacity survived. (ECF Nos. 9, 13). Sanford filed an
amended complaint adding Officer Bret Thompson as a defendant on July 10, 2024. (ECF No. 23).

Defendants filed a Motion to Stay all Proceedings as to Officer Hobbs, explaining Hobbs
was on military leave and therefore, had not been personally served and was unavailable to

---

[1] With his Response Plaintiff submitted a separate Statement of Indisputable Facts (ECF No. 122) and several
conventionally filed exhibits (ECF No. 121).

participate in discovery or otherwise assist in the defense of the case. (ECF No. 22). On July 22, 2024, Sanford filed a Motion to Dismiss, requesting that Officer Hobbs be removed as a defendant; the motion was granted. (ECF Nos. 31, 40).

On August 8, 2024, Sanford was directed to file a second amended complaint as the Court lacked sufficient information to determine the jurisdictional, legal, and factual basis for Sanford's allegations against Officer Thompson. (ECF No. 39). On August 13, 2024, Sanford filed a Motion to Dismiss, requesting that Officer Thompson be removed as a defendant and Thompson was dismissed. (ECF Nos. 46, 50).

Sanford filed his second amended complaint on August 13, 2024; only Officer Brad Robinson was named as a defendant. (ECF No. 48, p. 6). Sanford brings claims against Officer Robinson in his individual capacity, alleging Robinson falsely imprisoned and prosecuted, and falsely detained, charged and arrested Sanford under physical and mental duress and without probable cause or a warrant. *Id*., pp. 6–8. Sanford seeks compensatory damages in the amount of $5,250 for attorney fees paid, and punitive damages for pain and suffering. (ECF No. 48, p. 9).

Sanford more particularly describes that Defendant Robinson violated his rights on March 12, 2021. (ECF No. 48, p. 2). On that day, Sanford had driven to the Washington County Sheriff's Office with the purpose of filing a report of fraud. *Id*. Officer Dakota Powell was assisting Sanford with filing the fraud report when Sanford needed to retrieve his identification from his vehicle. *Id*. While inside his car searching for his identification, Sanford says he was approached by Defendant Robinson and a second unnamed officer. *Id*. Sanford describes that Defendant Robinson wordlessly reached inside Sanford's vehicle, unlocked and opened the driver's side door, grabbed Sanford by the arm, and pulled him from the vehicle. *Id*. Sanford alleges Defendant Robinson then physically and verbally threatened him; Robinson allegedly told Sanford that he needed to

sign for charges related to a prior domestic incident in 2020, and threatened to physically drag Sanford through the back entrance of the Washington County Sheriff's Office if he did not sign the paperwork. *Id*. Sanford says he got out of his vehicle and began to record the encounter with Robinson on his cell phone. *Id*. (Plaintiff's Exhibit O).

Sanford describes that he accompanied the officers back into the Sheriff's office where Officer Robinson produced papers from the Washington County Prosecutors office; Sanford says the Robinson "solely commanding and acting to the arrest" then directed his subordinate, Officer Dakota Powell, to provide Sanford with the papers to sign. *Id*. Sanford says Defendant Robinson knew that there was no probable cause or warrant for Sanford's arrest, i.e., Robinson was not involved in and lacked personal knowledge of the case Officer Eli Hobbs had investigated a year prior, which led to this allegedly malicious prosecution, false imprisonment, arrest, and charging of Sanford on March 12, 2021. *Id*. Sanford alleges Defendant Robinson lacked authority, did not conduct a proper investigation, and lacked legal justification for his actions and thus, commanding Sanford to sign the paperwork with illegal and lacked due process. *Id*. Sanford brings three causes of action against Defendant Robinson: (1) malicious prosecution; (2) false imprisonment; and (3) false arrest. (ECF No. 48, p. 3).

Defendant Robinson argues that he is entitled to judgment as a matter of law because: (1) there is no proof of any personal involvement of Defendant Robinson, (2) there is no *respondeat superior* liability in §1983 actions; (3) the undisputed facts do not support that Sanford's constitutional rights were violated; and (4) Defendant Robinson is entitled to qualified immunity. (ECF No. 81).

Defendant Robinson argues that probable cause supported any arrest of Sanford, invalidating Plaintiff's claims for false arrest or malicious prosecution. (ECF Nos. 80, 81).

Defendant Robinson points out he was not personally responsible for the charges issued to Sanford on March 12, 2021, and could not be held liable for the actions of a subordinate, even if he had been the supervisor that day. (ECF No. 80). Defendant Robinson says it is undisputed that Sgt. Brett Thompson was the supervisor on duty on March 12, 2021, and an internal review conducted by Major Tion Augustine found no indication that Defendant Robinson was the supervisor who directed Officer Powell to issue Sanford's felony citation. (ECF No. 82, p. 6, citing Major Augustine's Affidavit at ECF No. 82-1, p. 10). Defendant Robinson contends Officer Powell cited Plaintiff under the authority of the prosecuting attorney, who continued the prosecution of Sanford until the charges were *nolle prossed*[2] Defendant Robinson contends the deputies of the Washington County Sheriff's Department were entitled to rely upon victim reports to Officer Hobbs in 2020.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

---

[2] Plaintiff's Exhibit K shows that the charges in question were dismissed on March 11, 2022, roughly one year after the felony citation was issued.

evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Supervisory Liability

Sanford alleges Defendant Robinson is liable for issuance of Sanford's citation, and all other actions taken by Officer Powell on March 12, 2021, as Robinson was acting in command. (ECF Nos. 48, 124). To the contrary, Defendant Robinson argues he could not be held liable in his individual capacity without allegations of personal involvement beyond supervisory liability that establishes a causal link to the alleged deprivation of Sanford's rights. (ECF No. 81, pp. 2–3). Defendant Robinson suggests Sanford sued him under the false belief that Robinson supervised the officer (Officer Powell) who wrote the charges on March 12, 2021. (ECF No. 81, p. 4). Defendant Robinson points out that Sanford's second amended complaint admits Robinson had no personal involvement in the underlying criminal investigation conducted by Officer Hobbs and no personal involvement in the issuance of the charges on March 12, 2021, by Officer Powell. *Id.*

Sanford's second amended complaint does not allege Defendant Robinson was personally involved in the criminal investigation conducted by Officer Hobbs (and Sanford's response to summary judgment also appears to admit Robinson was not), or personally involved in the issuance of the charges by Officer Powell. (ECF No. 48). Sanford alleges only that Defendant Robinson

was "involved in the chain of events leading to [Sanford's] arrest on March 12, 2021." (ECF No. 121, p. 3). Sanford contends Defendant Robinson is liable in his capacity as Powell's supervisor.

Government officials are liable only for their own misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). "[F]or a supervisor to be held liable for the acts of a subordinate, something more must be shown than merely the existence of the supervisor-subordinate relationship." *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir.1987). In addition, mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Id.*

The Court first notes there does not appear to be any dispute that Sgt. Brett Thompson was the supervisor on duty at the Washington County Sheriff's Office when Officer Powell issued the felony citation to Sanford on March 12, 2021. (ECF No. 82, ¶ 23). Section 1983 liability does not attach where Sanford can only suggest that Defendant Robinson was "involved in a chain of events" culminating in Sanford's arrest. And even if Defendant Robinson were supervising Officer Powell on March 12, 2021 – and the undisputed evidence is that he was not – Defendant Robinson could not be held responsible for Officer Powell's actions without "something more" that the mere "existence of the supervisor-subordinate relationship." *Clay, supra.*

The analysis continues, however, as Sanford alleges Defendant Robinson personally arrested him on March 12, 2021, by taking Sanford by the arm and telling him that he must come back into the Washington County Sheriff's Department to sign for the felony charges and that he would be taken force if he did not voluntarily comply.

### B. Qualified Immunity

Robinson argues he is entitled to qualified immunity regarding Sanford's claims of false arrest and malicious prosecution and contends Sanford's false imprisonment is a state law claim which is not actionable under § 1983. (ECF No. 81, pp. 6–8).

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id*. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

In evaluating whether qualified immunity applies, courts ask two questions: (1) whether the facts shown by the Plaintiff make out a violation of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. The questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "When there are multiple defendants who played limited roles in the conduct complained of the determination whether an individual defendant is entitled to qualified immunity is based upon that defendant's knowledge and conduct at the time or times he or she participated in that conduct." *Cannon v. Dehner*, 112 F.4th 580, 586 (8th Cir. 2024), *petition for cert docketed* (Dec. 20, 2024).

### a. False Arrest

"Under the Fourth Amendment, a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson, Mo.,* 897 F.3d 916, 920 (8th Cir. 2018). "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen,* 712 F.3d 1222, 1226 (8th Cir. 2013) (internal quotation marks and citation omitted). However, a false arrest claim under § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir. 2001).

"[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Eighth Circuit has provided a measure of guidance for evaluating the existence of probable cause: Probable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable officer to believe that the defendant has committed or is committing an offense.'" *Borgman v. Kedley,* 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Fisher v. Wal-Mart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2010)). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis,* 596 F.3d 465, 474 (8th Cir. 2010).

"We must give law enforcement officers 'substantial latitude in interpreting and drawing inferences from factual circumstances,' ... but such latitude is not without limits." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (quoting *United States v. Washington,* 109 F.3d 459, 465 (8th Cir. 1997)). First, evidence tending to "negate the possibility that a suspect committed a crime is relevant" to whether probable cause exists. *Id.* "In this sense, the Fourth Amendment requires that we analyze the weight of all the evidence – not merely the sufficiency of the incriminating

evidence." *Id*.  Second, "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking arrest." *Id*. (internal punctuation marks and citations omitted).  An officer is entitled to "qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'" *Joseph*, 712 F.3d at 1226.  "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Id*. (internal quotation marks and citation omitted).  The existence of probable cause is a question of law.  *Id*. at 1227.

Sanford alleges he was arrested on March 12, 2021, at the Washington County Sheriff's Department when Defendant Robinson and another unnamed officer followed him to his car and informed him that he would be physically dragged into the building if he did not walk in and sign paperwork for charges from an event that occurred a year prior. (ECF No. 48, p. 2).  Sanford alleges that upon entering the building Defendant Robinson, while acting as Officer Powell's superior, caused Officer Powell to make Sanford sign the felony citation. *Id*. Sanford acknowledges that the Washington County Prosecutor's Office had sent over the paperwork that he was being asked to sign. *Id*. Sanford argues Officer Robinson did not have probable cause to issue the felony citation because Officer Robinson had received a dispatch call earlier that morning which should have alerted Defendant Robinson there was no probable cause or warrant for Sanford. (ECF No. 48, p. 2; ECF No. 124, p. 7; conventionally filed Exhibit F).

Upon review of the dispatch log, the undersigned observes that the log does not state there is no probable cause for Sanford's arrest on a felony citation; the log contains a notation by username AEVANS that PC (probable cause) was not confirmed at this time. (Plaintiff's Exhibit

F).  The felony citation signed by Officer Powell and Sanford on March 12, 2021, however, indicates it was issued with the permission of Washington County Prosecutor Matt Durrett. (Plaintiff's Exhibit A).

Defendant Robinson argues the citation was issued by Officer Powell under the authority of the Prosecuting Attorney, and the charges were prosecuted for some time before they were *nolle prossed*. (ECF No. 81, p. 7). Defendant Robinson also argues that the Washington County Sheriff's deputies are entitled to rely upon information provided by victims to Officer Hobbs; in other words, Officer Powell had probable cause for the issuance of felony citation to Sanford on March 12, 2021, and for a brief detention of Sanford. *Id.*  Defendant Robinson further argues that even if Officer Powell had been responsible for writing up the charges (and the parties all agree he was not), the law does not require officers to conduct a perfect investigation to avoid suit for false arrest, citing *Stepnes v. Ritschel,* 663 F.3d 952, 961 (8th Cir. 2011).

The Court recognizes Sanford is critical of the investigation of the 2020 domestic matter and has even provided an analysis of the investigation performed by Scott Lawson. (Plaintiff's Exhibit B-1).  Whether Sanford's criticisms are valid is immaterial.   The Court relies upon the fact that Officer Hobbs performed an investigation (even if, as Plaintiff says, it was poorly done) together with Officer Powell's certification that he "has just cause to believe" Sanford committed the crimes of aggravated assault, domestic battery, and interfering with an emergency communication device. Officer Powell charged Sanford with "permission from the [Washington County] Prosecuting Attorney."  The Court finds Officer Powell was justified in relying on Officer Hobbs' investigation which provided probable cause, on March 12, 2021, to issue the felony citation to Sanford. *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011) (finding that officers may rely upon information provided by victims of a crime for probable cause); *see also Fisher v.*

*Walmart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2020) (probable cause is a question of law for the court). The fact that these charges were later dropped against Sanford is immaterial to the Court's probable cause analysis. *Linn v. Garcia,* 531 F.2d 855, 861 (8th Cir. 1976). For these reasons, the Court finds there was no constitutional violation, and thus, Defendant Robinson is entitled to qualified immunity.

### b. Malicious Prosecution

For a malicious prosecution claim to state a constitutional violation, it must arise under the Fourth Amendment. *Harrington v. City of Council Bluffs,* 678 F.3d 676, 679 (8th Cir. 2012). "[T]he gravamen of the tort of malicious prosecution" is "the wrongful initiation of charges without probable cause." *Thompson v. Clark,* 596 U.S. 36, 44 (2022). The elements of a malicious prosecution claim are: (1) the charge was instituted without probable cause; (2) the motive for instituting the suit was malicious – that is, for a purpose other than bringing the Plaintiff to justice; and (3) the prosecution ended with a favorable termination. *Id.* In *Thompson,* the Court determined that to establish a favorable termination a Plaintiff "need only show his prosecution ended without a conviction." *Id.* at 39.

It is undisputed that that all charges were terminated in Sanford's favor – through *nolle prosequi* – meeting the third element of malicious prosecution. Sanford cannot, however, satisfy the first two elements. Plaintiff merely alleges a malicious motive for the prosecution, failing entirely to present any evidence of Defendant Robinson's malicious motives. And importantly, because the undersigned finds probable cause supported Sanford's arrest and issuance of the felony citation, Sanford cannot provide the first element of malicious prosecution.

### c.    False Imprisonment

Sanford's claim for false imprisonment is a state law claim which is not actionable under §1983 and must be dismissed. *King v. Beavers,* 148 F.3d 1031, 1034 (8th Cir. 1998). Even if actionable, Sanford complains of "being falsely detained then arrested under duress" but produced no evidence that he was detained for longer than a signature, much less imprisoned on the date in question, and it is undisputed that Sanford walked out of the Sheriff's Department after he signed for the paperwork. (Plaintiff's Exhibit O).

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 80) is **GRANTED** and all claims against Defendant Robinson will be **DISMISSED WITH PREJUDICE** in a concurrent **JUDGMENT** and this matter **CLOSED.**

**IT IS SO ORDERED** this 14th day of February 2025.


*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE